ERROL DEHANEY,
  *Plaintiff*,

v.                                                    No. 3:17-cv-00308 (JAM)

AMY CHAGNON, *et al*.,
  *Defendants*.

### INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A

Plaintiff Errol Dehaney is incarcerated at MacDougall-Walker Correctional Institution. He

has filed a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983, alleging violations of

his constitutional rights by defendants Amy Chagnon and Maria Pirro Simmons. Based on my

initial review pursuant to 28 U.S.C. § 1915A, I conclude that plaintiff's complaint should be

dismissed in part, but that the remaining claims should proceed against both defendants.

### BACKGROUND

The following allegations from plaintiff's complaint are accepted as true only for purposes

of the Court's initial review. In early 2015, plaintiff applied for a job as a classroom tutor at the

MacDougall-Walker Correctional Institution school. On March 13, 2015, he was assigned to be a

tutor in defendant Chagnon's math class. Chagnon taught two math classes each morning and

taught one special education student in the afternoon. Doc. #1 at 3 (¶¶ 5–9). From March 2015 to

October 2015, plaintiff tutored inmate students during both of the morning classes and performed

miscellaneous tasks in the classroom during Chagnon's session with the special education student.

Plaintiff alleges that during his time as a tutor in Chagnon's classroom, Chagnon

repeatedly engaged in inappropriate behavior and made sexual comments to the inmate students

in her classes. In addition, plaintiff alleges that Chagnon had a close relationship that was sexual

in nature with one student in particular. The other students in the classes became upset because Chagnon favored this particular student and allowed him special privileges. Chagnon also flirted with other students, besides the student with whom she allegedly had a relationship. Chagnon's conduct created tension and jealousy within the group.

Students often behaved disrespectfully towards Chagnon, but she refused to discipline them because she did not want them to tell the school principal, defendant Pirro, about her inappropriate behavior. Chagnon had informed plaintiff in late March 2015 that she had an ongoing conflict with Pirro. *Id.* at 6 (¶ 30). Multiple students voiced their frustrations about Chagnon's unfair treatment of them and threatened to stop coming to class. Chagnon repeatedly relied on plaintiff to convince these students to continue coming to class and not to report Chagnon's inappropriate behavior to Pirro. Chagnon also required plaintiff to do various school-related projects for her, including preparing lessons for her to use in the classroom.

In October 2015, plaintiff learned that Pirro would be leaving and a new principal would be taking her place. *Id.* at 26 (¶ 137). On October 23, 2015, Chagnon told plaintiff that she could "do without a tutor" and suggested that plaintiff apply to work for another teacher. When plaintiff asked Chagnon if she was dissatisfied with his work performance, she responded that he was an "excellent worker" and that she would write him an "excellent" performance evaluation. Plaintiff suspected that Chagnon's decision was motivated by her desire not to teach afternoon classes. Chagnon was the only teacher with an assigned tutor who did not have to teach full classes in both the morning and the afternoon. Now that a new principal was starting, Chagnon likely feared that if she continued to have a tutor, the new principal might force her to teach afternoon classes. *Id.* at 28 (¶ 144).

On October 25, 2015, plaintiff wrote to another teacher requesting to be assigned as that teacher's tutor. Plaintiff also wrote to Chagnon asking for her help in getting reassigned. On

October 26, 2015, plaintiff spoke to his unit counselor, Counselor Grant, about his work situation and his need for a new tutoring assignment. On October 27, 2015, plaintiff conveyed this same information to his unit manager, Captain Black. Plaintiff also asked Captain Black to speak with Pirro regarding his reassignment to a new tutoring position. That same day, plaintiff wrote to Pirro directly and asked to be reassigned as a tutor for another teacher. *Id.* at 29–30 (¶¶ 146–51).

On October 28, 2015, prison officials transferred plaintiff to the University of Connecticut for scheduled medical treatment. For several days following his visit to the University of Connecticut, plaintiff remained in the medical unit at MacDougall-Walker. *Id.* at 29 (¶ 148).

On November 4, 2015, Captain Black informed plaintiff that he had spoken to Pirro. Pirro had indicated to Black that she disliked that Chagnon had arranged for plaintiff to do her job for her by "teaching at the board," but that she did not have a problem with plaintiff himself. Captain Black indicated that plaintiff would not be fired unless he received an unfavorable work report. Plaintiff then made a complaint to Captain Black about Chagnon's misconduct and inappropriate behavior. Captain Black indicated that he would talk to Chagnon. *Id.* at 30 (¶ 153).

Later that day, after speaking to Captain Black, Chagnon issued plaintiff an unfavorable work evaluation. She gave him a rating of "fair" and included a comment stating that plaintiff had a conflict of interest. When Chagnon asked plaintiff to sign the evaluation, plaintiff refused, because he did not agree with it. Plaintiff asserts that throughout his time as a tutor, he worked diligently, followed Chagnon's instructions, and was successful in helping students grasp the material. Pirro later signed off on the unfavorable evaluation. *Id.* at 30–31 (¶ 154–56).

After seeing the evaluation, plaintiff wrote to Pirro and accused her of conspiring with Chagnon to retaliate against him. Plaintiff asked to have the evaluation expunged and to be assigned as a tutor to another teacher. Pirro did not respond. Plaintiff reported defendants' conduct to Captain Black. *Id.* at 31 (¶¶ 156–58).

3

By December 3, 2015, Pirro had been replaced by the new principal, Principal Beaulieu. Plaintiff told Beaulieu about his situation. He informed her that he had written twice to Pirro and several times to Beaulieu but had received no response. Beaulieu directed plaintiff to Superintendent Holly, who told plaintiff that Chagnon had decided she did not need a tutor, that there was no malice involved in plaintiff's removal as Chagnon's tutor, and that plaintiff could send a letter to the school or principal seeking to become a tutor again. *Id.* at 32 (¶¶ 163–64).

On December 7, 2015, plaintiff wrote to Beaulieu and sought a tutoring assignment with another teacher. In his letter, he discussed the experience, skills, passion, and successful track record that he would bring to a tutoring position. He also sent a copy of the letter to Holly. *Id.* at 32–33 (¶ 165). Despite this letter and despite his filing of grievances, plaintiff was not reassigned to a new tutoring position.

 At some point in December 2015, the Department of Correction Security Division investigated Chagnon. The captain in charge of the investigation retired in February 2016, amidst allegations that he had covered up misconduct in previous investigations. Chagnon continues to teach at the MacDougall-Walker school and continues to act inappropriately towards her students. *Id.* at 35 (¶¶ 170–71).

Plaintiff alleges that defendants violated his First and Fourteenth Amendment rights—and that they conspired to do so—and he also alleges that Chagnon violated the Prison Rape Elimination Act. He seeks compensatory and punitive damages; declaratory relief; and injunctive relief, in the form of an order removing Chagnon from the classroom and expunging his negative performance evaluation. *Id.* at 39–43.

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A(a), the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon

which relief may be granted, or that seeks monetary relief from a defendant who is immune from

such relief. The Court must accept as true all factual matters alleged in a complaint, although a

complaint may not survive unless its factual recitations state a claim to relief that is plausible on

its face. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Mastafa v. Chevron Corp.*, 770

F.3d 170, 177 (2d Cir. 2014) (same). Nevertheless, it is well-established that "pro se complaints

'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"

*Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of*

*Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02

(2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

### *Official Capacity Claims*

The complaint indicates that "all defendants are being sued in their individual and official

capacities." Doc. #1 at 5. To the extent that plaintiff seeks monetary damages from defendants in

their official capacities, these claims are barred by the Eleventh Amendment. *See Kentucky v.*

*Graham*, 473 U.S. 159 (1985); *Quern v. Jordan*, 440 U.S. 332, 342 (1979). All such claims are

therefore dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

### *First Amendment Retaliation*

Plaintiff alleges that after he complained to Captain Black about Chagnon's inappropriate

behavior, Chagnon retaliated against him by issuing him a negative performance evaluation

immediately following his complaint. Plaintiff further alleges that he made Pirro aware of the

retaliation, but that she took no action to correct the situation; rather, she signed off on the

evaluation. Due to the negative performance evaluation, plaintiff was not reassigned to another

tutoring position.  Plaintiff asserts that defendants' retaliatory conduct violated his rights under

the First Amendment.

To establish a First Amendment retaliation claim, a plaintiff must allege facts showing

5

"(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015). The filing of grievances clearly constitutes protected activity; courts within this Circuit have also found that "[i]n some circumstances this protection extends beyond the filing of formal grievances to oral complaints made to corrections officers." *Tirado v. Shutt*, 2015 WL 4476027, at *4 (S.D.N.Y. 2015); *see also McMillian v. Cty. of Onondaga*, 2015 WL 1403459, at *11 (N.D.N.Y. 2015) (collecting cases). And although there is no constitutional right to a prison job, "a claim for relief may be stated under section 1983 if otherwise routine administrative decisions are made in retaliation for the exercise of constitutionally protected rights." *Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987). Here, I conclude that plaintiff has alleged the basic requisites for a First Amendment retaliation claim against both defendants.

### *Equal Protection*

Plaintiff also alleges that defendants violated his Fourteenth Amendment equal protection rights, because they failed to reassign him to a new tutoring position, while other inmate tutors who lost their jobs were routinely reassigned to new positions. The Supreme Court has recognized that "[t]he Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).

A plaintiff may state a violation of the Equal Protection Clause under the "class of one" theory. To state a valid class-of-one claim, a plaintiff must allege that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Plaintiff

contends that defendants treated him differently than other similarly situated inmates who were tutors and were assigned to new tutoring jobs when their original jobs were eliminated. The Court concludes that the plaintiff has alleged sufficient facts to support a plausible class-of-one equal protection claim against defendants. The Court notes, however, that in order to prevail on this claim, plaintiff will ultimately be required to "show an extremely high degree of similarity" between himself and the individuals he alleges are similarly situated. *See Clubside v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (citation omitted).

### *Conspiracy*

Plaintiff also alleges that defendants conspired with one another to violate his constitutional rights. In order to state a claim for conspiracy under § 1983, a plaintiff must allege: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages. *See Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324–25 (2d Cir. 2002). To the extent that plaintiff is attempting to assert such a claim, the allegations in the complaint are too conclusory to suffice. In the complaint, plaintiff refers to Pirro's "conspiracy to retaliate by signing the work evaluation (along with def. Chagnon)," Doc. #1 at 31 (¶ 156), but plaintiff alleges no facts from which the Court could infer the existence of a conspiracy between the two defendants. *See Ciambriello*, 292 F.3d at 325 ("complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed"). Plaintiff's conspiracy claim is therefore dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### *Prison Rape Elimination Act*

Plaintiff also seeks a declaratory judgment stating that Chagnon's conduct violated the Prison Rape Elimination Act, 42 U.S.C. § 15601 *et seq.* ("PREA"). Doc. #1 at 43. There is no

private right of action for inmates to sue prison officials for non-compliance with PREA. *See*

*Green v. Martin*, --- F. Supp. 3d ---, 2016 WL 7230500 (D. Conn. 2016). *See also Chao v.*

*Ballista*, 772 F. Supp. 2d 337, 341 n.2 (D. Mass. 2011) (collecting cases and noting that "every

court to address the issue" has held that the PREA does not allow a private cause of action);

*Gonzaga University v. Doe*, 563 U.S. 273, 279–80 (2002) (in the absence of "an 'unambiguous'

intent to confer individual rights," such as a right to sue, courts will not imply such a right in a

federal funding provision). Plaintiff's claim under PREA is therefore dismissed pursuant to 28

U.S.C. § 1915A(b)(1).

CONCLUSION

In accordance with the foregoing analysis, the Court enters the following orders:

(1)     The conspiracy and PREA claims are **DISMISSED** pursuant to 28 U.S.C.

§ 1915A(b)(1). All claims for monetary damages against defendants in their official capacities are

dismissed pursuant to 28 U.S.C. § 1915A(b)(2). The First Amendment retaliation claim and the

Fourteenth Amendment equal protection claim will proceed against defendants in their individual

capacities, as well as against defendants in their official capacities insofar as plaintiff seeks

declaratory and injunctive relief.

(2)     **Within twenty-one (21) days of this Order**, the Clerk shall ascertain from the

Department of Correction Office of Legal Affairs the current work addresses for Principal Maria

Pirro Simmons and Amy Chagnon and mail a waiver of service of process request packet to each

defendant in her individual capacity at her current work address. On the thirty-fifth (35th) day

after mailing, the Clerk shall report to the court on the status of the request. If either defendant

fails to return the waiver request, the Clerk shall make arrangements for in-person service by the

U.S. Marshals Service.

(3)     **Within twenty-one (21) days of this Order,** the U.S. Marshals Service shall serve the summons, a copy of the complaint, and this order on defendants in their official capacities by delivering the necessary documents in person to the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141.

(4)     Defendants shall file their response to the complaint, either an answer or motion to dismiss, **within sixty (60)** days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(5)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed **within six months (180 days)** from the date of this order. Discovery requests should not be filed with the court.

(6)     All motions for summary judgment shall be filed **within seven months (210 days)** from the date of this order.

(7)     The Clerk shall send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Legal Affairs Unit.

(8)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9)     If plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)(2) provides that plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If plaintiff has more

9

than one pending case, he should indicate all of the case numbers in the notification of change of

address. Plaintiff should also notify defendants or counsel for defendants of his new address.

   (10)    Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the

court.

   It is so ordered.

   Dated at New Haven this 20th day of June 2017.

                                                      /s/ *Jeffrey Alker Meyer*
                                                      Jeffrey Alker Meyer
                                                      United States District Judge