# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| ERROL DEHANEY,<br>    *Plaintiff*,<br><br>v.<br><br>AMY CHAGNON, *et al.*,<br>    *Defendants*. | No. 3:17-cv-00308 (JAM) |

## ORDER ON MOTION FOR SUMMARY JUDGMENT

Plaintiff Errol DeHaney is a prisoner in the custody of the Connecticut Department of Correction. He filed this lawsuit alleging that he was removed from his job as a tutor at the prison school and given an unfavorable work evaluation report that has prevented him from returning to work as a tutor. DeHaney contends that these actions were in retaliation for complaints he lodged about the teacher for whom he worked. He has filed this lawsuit against the teacher—defendant Amy Chagnon—and the prison school's principal—defendant Maria Pirro Simmons—alleging claims for retaliation against his right to free speech under the First Amendment and for violation of his right to equal protection under the Fourteenth Amendment.

Defendants have now moved for summary judgment. I will grant their motion in large part and deny it in part. A trial shall proceed solely as to DeHaney's First Amendment retaliation claim to the extent that it is based on issuance of an unfavorable work evaluation report and only to the extent that DeHaney seeks expungement of the report or any other appropriate declaratory or injunctive relief for which he has standing.

### BACKGROUND

The following facts are based on the parties' submissions and are viewed in the light most favorable to DeHaney. At all relevant times, DeHaney was incarcerated at MacDougall-

1

Walker Correctional Institution ("MacDougall"). On March 13, 2015, he was assigned to work as a tutor in the classroom of defendant Amy Chagnon at the prison school. At that time, Chagnon regularly taught two groups of students in morning classes. DeHaney regularly tutored students during those timeframes. In the afternoons, Chagnon regularly taught only one student, and DeHaney performed miscellaneous duties during that time. Doc. #49-1 at 2.

DeHaney's briefing includes extensive allegations that he perceived Chagnon to be flirtatious and sexually suggestive with her students. He also claims that she had an inappropriate sexual relationship with one particular student. *Id.* at 2–9. Because I am required at this stage to view the facts in the light most favorable to DeHaney, I assume these allegations solely for purposes of this ruling.

During October 2015 and until November 12, 2015, defendant Maria Pirro (a.k.a Maria Pirro Simmons) served as the principal of the prison school. Doc. #41-2 at 2. At some point prior to October 23, 2015, DeHaney became aware that Pirro was leaving her position and would soon be replaced by a new principal. Doc. #49-1 at 10.

On October 23, 2015, Chagnon told DeHaney that she no longer required his services as a tutor. DeHaney speculated that the reason for Chagnon's decision was that she feared that, if she continued to use a tutor, the incoming principal to replace Pirro would require Chagnon to teach afternoon classes. DeHaney then wrote a letter to another teacher requesting to serve as her classroom tutor. *Id.* at 9–10.

On October 26, 2015, DeHaney told Counselor Grant, his housing unit counselor, that Chagnon had informed him three days before that he was no longer needed as a tutor. He explained to Grant that he believed this was due to Chagnon's desire to avoid teaching afternoon

2

classes. On October 27, DeHaney repeated these claims to Captain Black, his housing unit manager. Doc. #41-3 at 7–11.

In the meantime, according to Chagnon, she met with Deputy Warden Guardarrama on October 26 or October 27 to discuss DeHaney. At that meeting, Chagnon requested that DeHaney be reclassified so that he would not work with her or be in the school where she worked. Guardarrama explained to Chagnon that she would have to prepare a work report explaining the reason for this reassignment. Doc. #41-1 at 4.

Chagnon then provided Guardarrama with a copy of a draft work report she had prepared. In the report, she rated DeHaney as excellent in three categories (attendance, initiative, and productivity), and as fair in two categories (attitude, overall). Doc. #41-4 at 3, 6. The report stated that DeHaney was removed for other purposes. Guardarrama told Chagnon that this draft work report did not reflect the reason for the reassignment and told her to add additional language explaining the reason for reassignment. Doc. #41-1 at 4–5, Doc. #41-4 at 2.

Guardarrama asked Chagnon why she wanted DeHaney to be reassigned, and she explained that she felt very uncomfortable around him. She told Guardarrama that she believed that DeHaney had become infatuated with her and had sexualized their working relationship, leading him to make inappropriate comments. Doc. #41-4 at 2–3. Guardarrama then researched DeHaney's criminal history background. *See State v. Dehaney*, 261 Conn. 336, 340–43 (2002) (describing evidence of DeHaney's triple murder of his wife and two young children for which he claimed insanity and extreme emotional disturbance). In light of this background and DeHaney's inappropriate comments, Guardarrama determined that DeHaney should not continue to work with Chagnon. Doc. #41-4 at 3.

Guardarrama then recommended that Chagnon include the following language in her report "Engaging in conduct that constitutes, or gives rise to, the appearance of a conflict of interest. Reclassify without malice." Chagnon incorporated this change with substantially similar language into her work report. *Id.* at 2–3. On November 3, 2015, Chagnon entered the date on the revised work report and provided a copy to Pirro who in turn signed the report as well. Doc. #41-1 at 5–6; Doc. #41-2 at 3.

On the morning of November 4, 2015, DeHaney spoke again to Captain Black about Chagnon and his claims that she was inappropriate with student inmates. Doc. #41-3 at 11. Later that day, Chagnon met DeHaney outside her classroom with a correctional officer present. She presented the revised work report to him and asked him to sign it. He refused. DeHaney believes that he was given this negative work report in retaliation for his complaints about Chagnon that he made to Captain Black and Counselor Grant. Doc. #49-1 at 11.

The final work report rates DeHaney as "Excellent" in the areas of Attendance, Initiative, and Productivity, while rating him as "Fair" in the areas of Attitude and Overall. Doc. #41-1 at 12. It includes the following comment:

> For approximately six months, Mr. DeHaney worked under my supervision as a tutor in the school. He demonstrated excellent attendance, initiative and productivity while employed. At the same time, Mr. DeHaney also engaged in conduct that constituted and gave rise to the appearance of a conflict of interest. Consequently, his reclassification is without malice and does not require disciplinary action.

*Ibid.*

DeHaney thereafter sought work as a tutor for a different teacher, but he was unable to obtain a position. On June 27, 2016, DeHaney underwent classification review, and he was offered the position of L2 Tierman effective July 1, 2016. On June 29, 2016 he refused to accept the assignment. Doc. #41-4 at 8.

4

DeHaney filed this civil rights complaint against defendants Chagnon and Pirro alleging that he was subject to retaliation in violation of his right to free speech under the First Amendment and his right to equal protection under the Fourteenth Amendment. Doc. #1. Based upon my initial review, I let these claims proceed and for defendants to answer the complaint. *See* Doc. #8; *Dehaney v. Chagnon*, 2017 WL 2661624 (D. Conn. 2017) (initial review order). Following a period for discovery, defendants have moved for summary judgment.

## DISCUSSION

The principles governing the Court's review of a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). I must view the facts in the light most favorable to the party who opposes the motion for summary judgment and then decide if those facts would be enough—if eventually proved at trial—to allow a reasonable jury to decide the case in favor of the opposing party. My role at summary judgment is not to judge the credibility of witnesses or to resolve close contested issues but solely to decide if there are enough facts that remain in dispute to warrant a trial. *See generally Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (*per curiam*); *Pollard v. N.Y. Methodist Hosp.*, 861 F.3d 374, 378 (2d Cir. 2017).

### *First Amendment retaliation*

In order to establish a claim for unlawful retaliation against First Amendment speech, a plaintiff must prove that he or she engaged in speech activity that is protected by the First Amendment and that a governmental defendant took adverse action against the plaintiff because of the plaintiff's protected speech activity. *See Burns v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018); *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015). A plaintiff must prove that he or she

5

suffered an adverse action of sufficient magnitude that it would deter a similarly situated person of ordinary firmness from exercising his or her right to speech. *See Burns*, 890 F.3d at 93–94; *Wrobel v. Cty. of Erie*, 692 F.3d 22, 31 (2d Cir. 2012).

Defendants concede for purposes of their summary judgment motion that DeHaney engaged in protected speech activity. Doc. #41-7 at 12.[1] Instead, they argue that there is no genuine issue of fact as to whether DeHaney's protected speech caused an adverse action (and that defendants are entitled to qualified immunity for purposes of DeHaney's money damages claims).

The first alleged adverse action at issue is DeHaney's removal from his tutoring job, and the parties dispute whether this action was sufficiently adverse in magnitude to support a First Amendment retaliation claim. I need not resolve their disagreement because it is clear that there was no causal connection between DeHaney's protected speech and his removal from the tutoring position. It is undisputed that Chagnon told DeHaney that he would no longer serve as her tutor on October 23. It is also undisputed that the alleged protected speech activity that DeHaney engaged in—complaining to Captain Black and Counselor Grant—occurred *after* October 23. Indeed, DeHaney was complaining to them about the very fact that Chagnon had

---

[1] In the government employment context, it is well established that a government employee may not maintain a First Amendment retaliation claim against his or her government employer unless the employee's speech was about a matter of public concern, rather than about a private matter or some internal workplace dispute. *See, e.g., Garcetti v. Ceballos*, 547 U.S. 410, 417-18 (2006). Defendants have not argued that this same "public concern" requirement should apply to a prisoner's First Amendment retaliation claim that arises—as here—from a workplace-related complaint and involves workplace sanctions. Although the Second Circuit has declined to adopt an across-the-board "public concern" requirement for all prison grievances, *see Friedl v. City of New York*, 210 F.3d 79, 87 (2d Cir. 2000), it has yet to decide the narrower issue of whether the "public concern" requirement should apply specifically in the prison employment context. Courts elsewhere are divided on the issue. *Compare Mack v. Warden Loretto FCI*, 839 F.3d 286, 299 n.69 (3d Cir. 2016) (no "public concern" requirement); *Watkins v. Kasper*, 599 F.3d 791, 795–96 (7th Cir. 2010) (same), *with Cossette v. Poulin*, 573 F. Supp. 2d 456, 460 (D.N.H. 2008) (requiring "public concern"); *see also Uduko v. Finch*, 2016 WL 1156738, at *3 n.3 (E.D. Mich. 2016) (invoking qualified immunity because of unsettled law); *Treadwell v. Almy*, 2013 WL 6668680, at *6–*9 (W.D. Mich. 2013) (same); *see also* Marissa C.M. Doran, *Lawsuits As Information: Prisons, Courts, and A Troika Model of Petition Harms*, 122 Yale L.J. 1024, 1077 n.277 (2013) (discussing issue).

removed him from his tutoring position. Accordingly, to the extent that DeHaney premises his First Amendment retaliation claim on the allegedly adverse action of his removal from his tutoring position, there is no genuine fact issue to show any causal relationship between this adverse action and DeHaney's protected speech activity, and I will grant summary judgment against DeHaney to the extent that he premises his claim on his removal from his tutoring position with Chagnon.

The next allegedly adverse action was the later issuance of an unfavorable work report that DeHaney alleges has prevented him from obtaining another tutoring job at the school. Because this work report issued shortly *after* DeHaney's protected speech activity (his complaints to Captain Black and Counselor Grant), there is at least a genuine fact issue as to causation.

Similarly, there is a genuine fact issue as to whether the work report was sufficiently adverse to amount to an adverse action (*i.e.*, that its issuance would deter a person of ordinary firmness from engaging in protected speech). Viewing the facts as I must in the light most favorable to DeHaney, a reasonable jury could conclude that the issuance of an unfavorable report that prevents a prisoner from working in a tutoring position would deter a similarly situated person of ordinary firmness from exercising his or her right to speech.

All that said, however, I conclude that as to DeHaney's claim for money damages defendants are entitled to qualified immunity as to the issuance of the work report. They are entitled to qualified immunity because it cannot be said that it was clearly established law or otherwise would have been clear to an objectively reasonable person that the issuance of this work report would qualify as an "adverse action" for purposes of a First Amendment retaliation claim.

7

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Carroll v. Carman*, 135 S. Ct. 348, 350 (2014) (*per curiam*). Qualified immunity protects a government official from liability if "(1) his conduct [did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." *Simpson v. City of New York*, 793 F.3d 259, 268 (2d Cir. 2015). As the Supreme Court has explained, "a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Richard*, 572 U.S. 765, 778–79 (2014).

When a prison official is confronted with a claim that he or she has retaliated against a prisoner's exercise of First Amendment protected speech, the official is entitled to qualified immunity if he or she reasonably could have believed that the alleged unfavorable action at issue was *de minimis* or not of sufficient magnitude to constitute an "adverse action" for purposes of a First Amendment retaliation claim. Thus, as the Sixth Circuit has noted, "[e]ven if a plaintiff suffers an adverse action, a defendant will not be held liable if he could reasonably believe that his conduct would not deter a person from continuing to engage in the protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 704 (6th Cir. 2005); *see also Lore v. City of Syracuse*, 670 F.3d 127, 162–64 (2d Cir. 2012) (qualified immunity protected defendant accused of First Amendment retaliation because of legal uncertainty about whether the alleged adverse action constituted an "adverse action" for purposes of a First Amendment retaliation claim); *Shockency*

8

*v. Ramsey Cty.*, 493 F.3d 941, 950 (8th Cir. 2007) (noting that "[t]he law defining adverse employment actions is fact intensive, and there are no clear guidelines between demotions, suspensions, or terminations at one end of the spectrum and conduct at the other end which is not actionable, such as general hostility," and that "[w]e conclude that O'Hara is entitled to qualified immunity because the law was not clearly established that the actions he took toward Moore had employment consequences serious enough to amount to adverse employment actions").

Here, the final work report that issued was a mixed appraisal that rated DeHaney as "Excellent" in three categories while also noting that he engaged in conduct giving rise to an appearance of a conflict of interest. Doc. #41-1 at 12. It noted that he would reclassified but "without malice" and without discipline. *Ibid.* Although DeHaney was unable to secure another prison tutor position, he was not disqualified from prison work, and he suffered no sanctions or other disciplinary actions as the result of the work report. *Compare Watson v. Rozum*, 834 F.3d 417, 423 (3d Cir. 2016) (adverse action requirement satisfied by issuance of disciplinary report subjecting prisoner to placement in restrictive housing or loss of good time credits); *Siggers-El*, 412 F.3d at 698–99, 702–04 (denying qualified immunity where evidence showed adverse action was transfer to another facility that defendant could foreseeably know would mean that prisoner would lose high paying job needed to pay his lawyer and make it more difficult for lawyer to visit him).

Despite the Court's request for supplemental briefing, the parties have not identified any precedent holding that an unfavorable, non-disciplinary prison work report may constitute an adverse action for purposes of a First Amendment retaliation claim. Doc. #56; Doc. #58 at 3–4; Doc. #60 at 1–2. Based on the constellation of facts known to Chagnon and Pirro as well as the lack of clarifying case law, I conclude that an objectively reasonable prison official would not

9

have known that the work report was sufficiently adverse that it would constitute an adverse action to support a claim for First Amendment retaliation. Thus, as to DeHaney's First Amendment retaliation claim for money damages, I will grant summary judgment against DeHaney on the basis of qualified immunity.

Of course, DeHaney seeks not just money damages but also seeks declaratory and injunctive relief, and it is well established that claims for declaratory or injunctive relief are not subject to the defense of qualified immunity. *See, e.g.*, *Sudler v. City of New York*, 689 F.3d 159, 177 (2d Cir. 2012). Because Pirro has left MacDougall, the individual-capacity claim against her for injunctive or declaratory relief is moot. *See Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) ("In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility."). On the other hand, because DeHaney has sued Pirro in her official capacity as principal of the school at MacDougall, Doc. #1 at 2, her successor as principal is automatically substituted as a party to this suit in that successor's official capacity. *See* Fed. R. Civ. P. 25(d). Similarly, because Chagnon remains in her position as teacher at the MacDougall school, DeHaney's claims for declaratory and injunctive relief against her in both her individual and official capacity are not moot.

That still leaves the question whether DeHaney's particular requests for declaratory and injunctive relief are cognizable. *See* Doc. #1 at 39–44. One of the forms of relief requested by DeHaney is an order to expunge his work performance evaluation so that it will not impede his ability to obtain another job as prison tutor. *Id.* at 43. Viewing the facts in the light most favorable to DeHaney, I think that DeHaney has standing to seek this relief in that there is a genuine fact issue about whether an expungement could allow DeHaney to obtain another tutoring position.

As to DeHaney's remaining requests for declaratory and injunctive relief (such as to issue declarations of illegality committed by Chagnon or to order her removal and re-training), DeHaney has no standing to maintain these claims for request because they would not result in a personal benefit or redress for the alleged wrongdoing that he suffered. *See Sudler*, 689 F.3d at 178 (denying declaratory judgment where plaintiffs could not show personal benefit from grant of relief); *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (party must have standing as to each form of relief sought). Because the complaint otherwise seeks any relief the Court may deem just, proper, and equitable, if DeHaney proves at trial that defendants have violated his right to be free from First Amendment retaliation, then the Court will consider at that time all arguments from the parties in terms of the scope of any declaratory or injunctive relief that would be appropriate.

### *Fourteenth Amendment "class-of-one" equal protection claim*

The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). A plaintiff may state a violation of the Equal Protection Clause when a governmental classification discriminates between entire classes or groups of people as well as when a classification singles out solely the plaintiff as a "class of one" for disparate treatment. *See Lanning v. City of Glens Falls*, 908 F.3d 19, 29 (2d Cir. 2018). To state a valid class-of-one claim, a plaintiff must allege that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

In light of the Supreme Court's conclusion that a class-of-one claim may not proceed in the public employment context, *see Engquist v. Oregon Department of Agriculture*, 553 U.S. 591

(2008), numerous courts have similarly declined to apply a class-of-one theory of Equal Protection relief in the context of challenges by prison inmates to their prison work assignments. *See Ashby v. Quiros*, 2018 WL 6704744, at *9 (D. Conn. 2018) (citing cases). Even assuming that DeHaney could proceed on a class-of-one theory, no genuine fact issues remain to support his claim. "[C]lass-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Ruston v. Town Bd.*, 610 F.3d 55, 59 (2d Cir. 2010) (quotation and citation omitted). A plaintiff must show that "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Id.* at 60.

In his briefing, DeHaney asserts that "he was treated worse than inmate Oehman, and continues to be treated worse than him" because inmate Oehman was reemployed and DeHaney was not. Doc. #49-1 at 77; Doc. #60 at 4–5. Other than this conclusory assertion in his briefing, DeHaney provides no evidence regarding how other tutor inmates were treated. He has failed to "show an extremely high degree of similarity" between himself and Oehmann or any others he alleges are similarly situated. *See Clubside v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (Sotomayor, J.) (citation omitted). Accordingly, I will grant defendants' motion for summary judgment on DeHaney's Equal Protection claim.

## CONCLUSION

For the reasons set forth above, the motion of defendants Amy Chagnon and Maria Pirro Simmons for summary judgment (Doc. #41) against plaintiff Errol DeHaney is GRANTED in

part and DENIED in part as described below.

As to DeHaney's First Amendment retaliation claim, the motion for summary judgment is GRANTED against him as follows: (1) to the extent that DeHaney's claim is based on the adverse action of his removal from the tutor position; (2) to the extent that DeHaney seeks an award of money damages against either Chagnon or Pirro for issuance of the unfavorable work report; and (3) to the extent that DeHaney seeks declaratory or injunctive relief against Pirro in her individual capacity. As to DeHaney's First Amendment retaliation claim, defendants' motion for summary judgment is DENIED to the extent that DeHaney seeks declaratory or injunctive relief including expungement of the work report against defendants Chagnon in her personal and official capacity and Pirro in her official capacity only.

As to DeHaney's Equal Protection claim, the motion for summary judgment is GRANTED against him in its entirety. The trial of this action shall therefore proceed solely as to DeHaney's First Amendment retaliation claim with respect to issuance of the unfavorable work report against Chagnon in her individual and official capacity and against Pirro in her official capacity and solely with respect to DeHaney's claims for expungement or other appropriate declaratory or injunctive relief. The Clerk of Court shall identify Pirro's successor as the principal of the school at MacDougall and substitute that successor as a party to this action.

DeHaney's motion for leave to submit evidence (Doc. #62) is DENIED for substantially the reasons set forth in defendants' objection (Doc. #63) and without prejudice to offering any appropriate admissible evidence at trial.

It is so ordered.

Dated at New Haven this 25th day of January 2019.

/s/*Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge